**E-Filed 7/17/07**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| PAUL A. REDD, JR., | Case Number C 98-20429 JF |
| Plaintiff, | ORDER DENYING RENEWED MOTION FOR SUMMARY JUDGMENT |
| v. | |
| STEVEN CAMBRA, JR., et al., | |
| Defendants. | [Doc. No. 91] |

Defendant Correctional Officer M. Daley ("Daley") brings a renewed motion for summary judgment in this civil rights action. The Court has considered the moving and opposing papers and the evidence submitted in connection therewith. For the reasons discussed below, the motion will be denied.

**I. BACKGROUND**

This lawsuit arises from an incident that occurred while Plaintiff Paul A. Redd, Jr. ("Redd") was incarcerated in the Security Housing Unit ("SHU") at Pelican Bay State Prison in Crescent City, California. On July 24, 1995, Daley and another officer escorted Redd and other SHU inmates to the prison law library. As was customary, the inmates were handcuffed with their hands behind their backs, and the handcuffs were attached at intervals to a single chain. On

the day in question, Redd was the last man on a six-man chain. A seventh inmate who was confined in a wheelchair was not put on the chain, but followed closely behind the chain as the group proceeded to the law library. Upon their arrival, Daley began unhooking the inmates from the chain one at a time and directing them to assigned study cells. Redd alleges that Daley unlocked the first four inmates, then skipped the fifth inmate to unlock him. Redd further alleges that as he was proceeding to his assigned study cell, with his hands still cuffed behind his back, Daley deliberately kicked the escort chain into his path. Daley states that he cannot remember in what order he unlocked the inmates and that he has no recollection of kicking the escort chain. Daley further states that if he did kick the chain it must have been a reflexive action, that he had never had any contact with Redd prior to the day in question, and that he had no intent to harm Redd.

However the incident occurred, there is no dispute that Redd fell and sustained injuries, including a gash over his left eye. He was taken by wheelchair to the medical clinic for treatment, then was returned to the prison law library. Later the same day he complained of pain in his jaw and was reexamined. He was referred for treatment to the dental clinic, and was treated there the following day for a cracked molar.

Redd filed four administrative appeals relating to this incident, identified by log numbers 95-07011, 95-07012, 05-06935 and 95-06936. In appeal number 95-07011, Redd stated that he was making a citizen's complaint against supervisors and staff who refused to use appropriate safety precautions. In the space for "action requested," he wrote "Properly instruct all assigned and relief law library staffs [sic] on controlling and keeping escort chains from hallway walkway when chaining or releasing prisoners to assigned study cells to prevent future violent fall incidents to staffs [sic] and prisoners that cause injuries, pain, broken bones and suffering as I have experienced." Complaint Exhibit# 2. In appeal number 95-07012, he complained that Daley's report on the incident, a copy of which he had received, was incomplete. Under "action requested," he asked that the warden instruct Sergeant Lucas ("Lucas"), who was in charge of the law library, to have each staff member present at the time of Redd's fall write a full report with diagrams. He specifically requested that Daley be directed to write a full report stating that he
2

caused the escort chain to be in Redd's path. In appeal number 95-06935, Redd alleged that the video cameras inside the law library recorded his fall and requested that the tape be preserved and that he be given a copy of the tape. In appeal number 95-06936, Redd again claimed that his injuries had been videotaped on the day of the incident at his request, and asked for a copy of the videotape.

All four appeals were combined at the first level of review and assigned to Lieutenant Briddle ("Briddle"), the supervisor responsible for overseeing the operations of C Facility of the SHU, for a first level response. Briddle interviewed Redd and Daley about the incident. He also spoke with Deidre McLaughlin ("McLaughlin"), a dental assistant at the prison dental clinic. McLaughlin approached Briddle on July 25, 2004 and told him that she had been at the dental clinic that day and had heard Redd discussing the incident with the dentist; that she had been at the law library the previous day and actually witnessed Redd's fall; and that her recollection of the incident differed sharply from Redd's account. McLaughlin hand-wrote a statement regarding Redd's fall.[1] In this statement, she indicated that on July 24, 2004 she was on her way to the law library but stopped at "the desk" because inmates were being released and taken into cells, blocking her entry. She stated that she saw Redd purposely loop his foot in the escort chain, walk a few steps and then drop to the ground. She further stated that when she was at the dental clinic the following day, Redd stated that he was a victim of negligence that resulted in a broken tooth and asked to have the tooth extracted. Finally, she expressed the opinion that Redd intended to falsify an incident in order to create a lawsuit against the State.

The first level response with respect to Redd's four combined appeals was issued in August 1995. The appeal decision was "Partially Granted." The response stated that no information or evidence supported any findings of misconduct, negligence or unprofessional behavior on the part of Daley and that contrary information indicated that Redd purposely injured himself. Accordingly, Redd's requests for copies of the video taken of his injuries, for

---

[1] In her declaration filed in support of Defendants' motion, McLaughlin states that she prepared this statement on July 25, 2004. However, the report bears the date "8-10-95" on its last line.

administrative action against Daley, and that Daley submit further documentation stating that he had caused Redd's injury were denied. His requests that the circumstances of the incident be documented and that staff be advised of safety precautions were "Partially Granted."[2] Redd pursued his appeals to the second level of review (warden's level) and to the final level of review (director's level), where further relief was denied.

In September 1995, Redd filed a fifth appeal, identified by log number 95-08583. In that appeal, Redd stated that he was making a citizen's complaint against McLaughlin for writing a false report. Under "action requested," he asked that the warden designate an official above the rank of lieutenant to investigate his complaint throughly; that the warden personally review the videotape of Redd's fall in the prison library; and that McLaughlin's employment be terminated. Appeal number 95-08583 was assigned to Briddle for a first level response. That appeal was denied at the first level and assigned to S. Upton for a second level of review, at which time it was screened out as duplicative of Redd's prior appeals.

Also in September 1995, Redd filed a sixth appeal, identified by log number 95-0882. Defendants have no copy of that appeal and no record as to its nature. Redd asserts that it was a complaint against Briddle and Long for handling the first five appeals improperly. The appeal was assigned to Long for a first level response and was denied. It was assigned to Upton for a second level of review, and, like the appeal regarding McLaughlin, was screened out as duplicative of Redd's prior appeals.

Redd filed the instant action on December 27, 1996. He filed the operative amended complaint on May 5, 1997. Approximately one year later, the case was assigned to this Court. A number of motions were filed by both sides, and on August 3, 1999, this Court issued an order ("August 3rd Order") clarifying the status of the action and stating that Redd had asserted the following cognizable claims pursuant to 42 U.S.C. § 1983: deliberate indifference in violation of the Eighth Amendment against, Daley and Lucas; and retaliation in violation of the First Amendment against, Briddle, Long and McLaughlin; and various state law claims. Aug. 3rd

---

[2] Redd's request for a copy of the law library videotape of his fall, set forth in appeal number 95-06935, was not addressed.

4

1  Order 4. On August 31, 1999, Defendants moved for dismissal and/or summary judgment with
2  respect to all claims. Defendants argued that Plaintiff could not show that his First Amendment
3  rights were chilled as a result of the alleged retaliation, that Plaintiff had not stated a cognizable
4  retaliation claim, that Plaintiff could not bring pendent state claims since he did not file a timely
5  state tort claim, and that Defendants are entitled to qualified immunity.[3]

6      On October 26, 1999 the Court granted in part and denied in part Defendant's motion
7  ("October 26th Order"). The Court first concluded that it should treat the motion as a motion for
8  summary judgment rather than dismissal. The Court granted summary judgment for Defendants
9  as to Redd's Eighth Amendment deliberate indifference, First Amendment retaliation, and state
10 law claims. The Court also held that Redd's Eighth Amendment claim could be classified as an
11 excessive force claim, and that Redd had identified witnesses who stated that Daley's eyewitness
12 was not present when the incident occurred, and that Daley kicked the escort chain directly into
13 Redd's path, causing him to fall. October 26th Order 8. The Court concluded that there was a
14 "triable issue of material fact as to whether Daley deliberately kicked the escort chain into Redd's
15 path." *Id.* 8. The remaining claims were dismissed.

16     On March 7, 2005 Daley filed the instant renewed motion for summary judgment on
17 Redd's Eighth Amendment excessive force claim. Daley argues that his conduct did not
18 constitute excessive use of force, and that he is entitled to qualified immunity. Daley argues that
19 the unsigned affidavits attached to Redd's opposition to the instant motion are inadmissible, that
20 Redd cannot create a triable issue of fact by submitting a statement that contradicts his prior
21 deposition, and that lay witnesses are not qualified to offer an opinion regarding Daley's mental
22 state. Redd opposes the motion.

23     Redd has submitted a number of affidavits from eyewitnesses. Redd attached signed
24 affidavits from witnesses Terflinger, Rodgers, Taylor, and Mosely (collectively "Complaint
25 Affidavits") to his complaint. *See* docket no. 1. Terflinger states that "as Paul Redd walked to
26 the assigned study cell, Officer M. Daley pushed the lengthy escort chain away from his feet in

---

[3] This was the first motion for summary judgment. *See* Docket No. 45

the direct path of Paul Redd, who immediately slipped on the chain," Terflinger Complaint Affidavit 2, and that "Dental Assistant Deidre McLaughlin was never present in the law library on July 24, 1995." Terflinger Complaint Affidavit 1. Rodgers states that "other prisoners and correctional staff members slip and/or fall on the escort security chain that officers leave lying on the floor in the pathway." Rodgers Complaint Affidavit 3. Redd has attached unsigned affidavits by Terflinger, Rodgers, and Mosley (collectively, "Unsigned Affidavits") to his opposition to the instant motion. In his unsigned affidavit, Mosley states that "while Correctional Officer Daley unhooked each prisoner, he held the chain in his left hand until he got directly behind the fifth prisoner." Mosley Unsigned Affidavit 2, and that "[Daley] looked at Plaintiff and then looked down at the pile of chain and intentionally kicked the chain directly into Plaintiff's walkway, causing Plaintiff to step on the chain and fall." *Id*. Redd later provided signed affidavits from Terflinger and Mosley (collectively "Signed Affidavits") that are otherwise identical to the Unsigned Affidavits.[4]

## II. LEGAL STANDARD

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56©; *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49;

---

[4] Redd did not provide a Signed Affidavit by Rodgers

1 *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

**A.   Excessive Force**

In the October 26th Order, the Court found a triable issue as to whether Daley used excessive force. October 26th Order 8. By the instant motion Daley asks the Court to revisit that determination in light of additional legal arguments and intervening changes in the law with respect to judicial immunity. After considering the motion anew, the Court reaffirms the conclusion that Redd has presented sufficient, admissible evidence to create a material issue of fact as to his Eighth Amendment excessive force claim.

**B.   Unsigned Affidavits**

Daley asserts that there is no genuine issue of material fact because Redd's Unsigned Affidavits are inadmissible. Reply 2. The Court may consider affidavits in summary judgment proceedings that were originally unsigned if they later are signed. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In *Sanchez*, plaintiff submitted unsigned affidavits to the court on October 7, 1987 with a notation that he would send signed ones at a later date. *Id.* The affidavits were signed on October 21, 1987, and the court entered summary judgment on March 11, 1988. *Id.* The court held that the time between March 11 and October 21 was not so long that the defendant was prejudiced by the court's consideration of the signed affidavits. *Id.* In the instant case, Plaintiff filed the Unsigned Affidavits with his opposition on August 26, 2005. Plaintiff filed Terflinger's signed affidavit on January 26, 2007 and actually had filed Mosley's signed affidavit on August 17, 2005, nine days before filing the unsigned version. The delay in filing Terflinger's signed affidavit is unfortunate, but Redd had attached signed affidavits by Mosely, Rodgers, Taylor, and Terflinger to his complaint that contained substantially the same content.[5]

---

[5] *Evangelista v. Inlandboatmen's Union of Pac.*, 777 F.2d 1390, 1398, Fn.3 (9th Cir. 1985) does not apply to the instant case. There the court denied a party's attempt to admit an unsigned affidavit. However, the court ruled that the affidavit was inadmissible because the content of the affidavit contained inadmissible legal conclusions that violated Rule 701 of the Federal Rules of Evidence. *Id*.

Accordingly, the Court concludes that Daley will not be prejudiced if the Court considers the signed affidavits of Mosely and Terflinger.

### C. Prior Contradictions in Testimony

Next, Daley argues that Redd is attempting to create a dispute of fact by contradicting his own deposition testimony. Daley asserts that Redd stated at his deposition that Daley allowed the escort chain to drop to the floor each time he unlocked a prisoner. Reply 3. Now, according to Daley, Redd is claiming that Daley held the escort chain in his hand, and never let it drop until he was behind the fifth prisoner. *Id*. Daley asserts that whether he held or dropped the chain is significant because if Daley had dropped the chain then it would have been impossible for him to kick it onto Redd's walking path. *Id*. In the Ninth Circuit, before the Court will disallow a statement when considering summary judgment, a party must show that the conflict between deposition testimony with later statements is a sham attempt to create an issue of fact. *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 267 (9th Cir. 1991). Daley provides insufficient evidence to support a finding that any of Redd's latest statements is a sham. Moreover, regardless of whether Redd made different statements as to whether Daley held or dropped the escort chain before kicking it, Redd provided his signed affidavits from witnesses who state "Officer Daley did not drop the chain to the floor until he was directly behind the fifth prisoner." Terflinger Signed Affidavit 2.[6] Accordingly, the Court concludes that any contradictions by Redd are insufficient to support summary judgment.

### D. Lay Witnesses Not Qualified to Offer an Opinion on Defendant's Mental State

Daley asserts that Redd's witnesses are not qualified to offer an opinion regarding Daley's mental state at the time of the incident. Daley relies on Rule 701 of the Federal Rules of Evidence, which states:

> If the witness is not testifying as an expert, the witness testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness testimony or the determination of a fact in issue, and © not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

---

[6] Docket Nos. 111 and 117

Fed. R. Evid. 710. The inference that Daley kicked the chain intentionally is rationally based on the perceptions reported by the witnesses of the incident at issue. Accordingly, the affidavits are not barred by Rule 701.

**E.      Qualified Immunity**

Finally, Daley argues that he is entitled to qualified immunity. A determination as to an officer's entitlement to qualified immunity involves a two-pronged inquiry. First, do the facts alleged, viewed in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a constitutional right? *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). Second, if the plaintiff has alleged a deprivation of a constitutional right, was that right clearly established? *Saucier*, 533 U.S. at 201; *Sorrels*, 290 F.3d at 969. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202. This inquiry is wholly objective; the defendant's subjective belief as to the lawfulness of his or her conduct is irrelevant. *Sorrels*, 290 F.3d at 970. As the Court held in the October 26th Order, there is a triable issue of fact as to whether Daley used excessive force in violation of the Eighth Amendment. It would be clear to a reasonable officer that intentionally kicking an escort chain into the pathway of a handcuffed inmate to trip him is unlawful conduct. Accordingly, the Court concludes that Redd has raised a sufficient issue of material fact as to qualified immunity to prevent application of that defense at the summary judgment stage.

### IV. ORDER

Good cause therefore appearing, IT IS HEREBY ORDERED that Defendant's motion for summary judgment is DENIED. The parties shall submit pretrial statements within ninety days of the issuance of this order.

DATED: July 17, 2007

_____
JEREMY FOGEL
United States District Judge

1  Copies of Order served on:

2

3  Notice will be electronically mailed to:

4  Allen Robert Crown: allen.crown@doj.ca.gov, ecfcoordinator@doj.ca.gov;
docketingsfawt@doj.ca.gov; delia.desuyo@doj.ca.gov; sandee.agustin@doj.ca.gov;
5  maricris.argarin@doj.ca.gov

6  Paul D. Gifford: paul.gifford@doj.ca.gov, rhonda.owens@doj.ca.gov

7  Catherine A. McBrien: catherine.mcbrien@doj.ca.gov,

8  Julianne Mossler: Julianne.Mossler@doj.ca.gov, lucille.santos@doj.ca.gov,
docketingSFCLS@doj.ca.gov
9

10  Notice will be delivered by other means to:

11  David P. Druliner
CA State Attorney General's Office
12  455 Golden Gate Ave
Suite 11000
13  San Francisco, CA 94102-7004

14  Bill Lockyer
CA State Attorney General's Office
15  455 Golden Gate Ave
Suite 11000
16  San Francisco, CA 94102-7004

17  Paul A. Redd, Jr
C6 114
18  CSP-Sacramento
CA State Prison-Folsom(New)
19  P O Box 290066
Represa, CA 95671

20

21

22

23

24

25

26

27

28

11

Case No. C-98-20429-JF
ORDER DENYING RENEWED MOTION FOR SUMMARY JUDGMENT
(JFEX2)